## Western Union Telegraph Co. v. Kemp Brothers.

1. TELEGRAPH COMPANIES—*Negligence in Delivering Messages.*—A telegraph company is liable for delay in making delivery of a message, to the extent of the damages thereby caused, when it might have been delivered to the addressee by the exercise of reasonable diligence on the part of the company.

2. EVIDENCE—*Primary and Secondary Proof.*—It is not necessary that proof of the loss of primary evidence be beyond the ·possibility of

mistake, but only to a moral certainty; reasonable proof, stronger or weaker, according to the circumstances of the case, seems to be all that is required of the destruction or loss of an instrument to lay the foundation for admitting secondary evidence of its contents.

**Memorandum.**—Action for damages sustained by the failure to deliver a message. In the Circuit Court of McLean County; the Hon. Thomas F. Tipton, Judge, presiding. Declaration in case; plea of not guilty; jury waived; trial by the court; finding and judgment for plaintiff; appeal by the defendant. Heard in this court at the May term, 1894, and affirmed. Opinion filed October 29, 1894.

Appellant's Brief, William L. Gross, Attorney.

Appellant concluded that a plaintiff, claiming damages for an injury alleged to be the result of another's negligence, must himself have used ordinary care. 4 Am. & Eng. Ency., p. 17. In other words, a person can not recover for an injury for which he contributed by his own want of ordinary care. Pierce on Railroads, 323; Beach on Con. Neg., Secs. 3, 7.

Contributory negligence may be defined to be that want of reasonable care upon the part of the person injured which concurred with the negligence of the defendant in causing the injury. Patterson's Ry. Ac. Law, 48, Sec. 47.

If the plaintiff, or party injured, by the exercise of ordinary care under the circumstances, might have avoided the consequences of the defendant's negligence, but did not, the case is one of mutual fault, and the law will neither cast all the consequences upon the defendant, nor will it attempt any apportionment thereof. Cooley on Torts, 674; Washington v. B. & O. R. R. Co., 17 W. Va. 190; 10 Am. & Eng. R. R. Co., 749, 755.

Appellees' Brief, J. J. Kemp, Kerrick & Spencer, J. W. Fifer and W. K. Bracken, Attorneys.

Where a message is an ordinary commercial message, or fairly informs the operator that it is one of business, it is sufficient to charge the company with notice of importance. Postal Tel. Cable Co. v. Lathrop et al., 131 Ill. 575; W. U. Tel. Co. v. Harris & Comstock, 19 Ill. App. 347.

It is only when legal testimony shows the instrument to have been in a particular place, or when the natural and legitimate presumption is that it is in certain hands, that it must be proved by legal evidence not to be there. Mariner v. Saunders, 5 Gilm. 118.

Mr. Presiding Justice Wall delivered the opinion of the Court.

This is an appeal from a judgment rendered by the Circuit Court against the appellant in favor of appellees for $400, in an action on the case for an alleged negligent failure to deliver a message to the appellees.

The message was sent from Denver, Colorado, informing appellees that a business proposition made by them by letter had been accepted. It was received at appellant's Bloomington office about 6 p. m. of May 26th, but was not delivered to appellees until the afternoon of June 4th, when, as the evidence tends to show, it was too late for the appellees to carry out the proposed contract and thereby they were damaged to the amount recovered. The appellant sought to show that it had used reasonable diligence to ascertain the address of the appellees, who were within the delivery limits of the Bloomington office, and had been unable to do so, but that the messenger boy had learned on inquiry at the post office that they were in the habit of receiving their mail at Normal, a village near Bloomington, and had caused a postal card to be sent them at that place advising them of a message awaiting them. The testimony offered by the appellees tends to show that such inquiry was not made and that such card was not sent. It also tends to show that such inquiry at the post office would have developed the fact that the appellees had a box and were in the habit of receiving mail there.

Appellant also proved by the same messenger that he had placed a notice of the message under the door of an office where appellees had a desk and where they were in the habit of writing their business letters.

The appellees offered evidence tending to contradict this

and to show that no such notice had been found there by them or by the other occupants of the office.

It also appeared from the evidence of the appellees that they inquired at the appellant's office on the 27th or 28th of May for a message and were informed there was none. A second inquiry was made on the day following when they were informed that such a message had been received and had been delivered, and when this was met by the assurance that it had not been delivered, the manager of the office made no effort to ascertain what was the fact.

On the 1st of June a message was received at the office of appellant for appellees from another sender at Des Moines, Iowa, and was promptly delivered at the house of George P. Kemp, the active man of the appellee's firm. On the 2d of June the appellees, who had heard in an indirect way that their contract had been accepted, telegraphed to the Denver parties asking for immediate reply. This message was sent through the Bloomington office, and though it was signed by the appellees, giving their street number, and though it was addressed to the senders of the undelivered message, yet it did not occur to the manager of the office that said message was still undelivered and that the appellees were anxious to get it.

On the 4th of June appellees received a letter from the Denver parties in response to the message of the 2d, saying that they had telegraphed acceptance, and intimating that by reason of the delay that had elapsed they "had lost hopes" that appellees would perform their contract. With this letter George P. Kemp again called at the appellant's office and inquired for the missing message and was told to call at a later hour, which he did, when the message was produced.

We are entirely satisfied with the conclusion reached by the trial court, a jury having been waived, that the appellant was guilty of negligence.

While the evidence offered by appellant tended to rebut the allegation in this respect, yet the record contains ample proof upon which such conclusion may rest.

The appellant argues, however, that conceding negligence as alleged, the appellees were not thereby prevented from going on with the contract and enjoying the benefit thereof.

This argument depends upon the assumed fact that after the message was received there was time enough to reach Denver and begin the performance of the contract at the appointed date. It is not necessary to state in detail the proofs in this respect. To do so would be to occupy space upon a mere question of fact. After careful consideration we are not disposed to differ with the trial court on this point. It may be that the appellees might have reached Denver on time, but in view of the necessary preparations, and the delay likely to occur in the transportation of horses and other property by freight trains over two railroads for an aggregate distance of about one thousand miles, and of the time required after reaching the point of destination for necessary rest for the horses before beginning a performance that could not be well done in a tired and jaded condition after so long a ride by rail, we think the appellees were fully warranted in not making an effort which would probably have proved a failure.

But the appellant insists that the appellees knew several days prior to June 4th that their contract was accepted and that after they received such information they had sufficient time.

The knowledge referred to was derived from a soliciting freight agent of the A. T. & S. F. Railroad Company, who stated that the Denver parties were expecting the appellees to make the shipment of horses and other property over that road. This involved the inference that the proposition made by appellees had been accepted, but we think no prudent business man would act upon such indirect information, nor would he be required to do so.

Appellant further argues that the court erred in receiving oral proof of the contents of the written proposition sent by appellees to the Denver parties. The paper containing the proposition was destroyed, as appeared from the testimony of the manager of the last named parties.

In effect he testified that he instructed the porter in the office to destroy that and a number of other papers supposed to be of no further use. He did not see the porter do what he was told to, that is to take a designated lot of papers into the alley and burn them, but states in positive terms that it was done.

It was apparent that the paper was not within the control of the appellees or of the Denver parties, and the testimony clearly tended to prove it was not in existence. At least there was *prima facie* proof of destruction, and this was sufficient basis upon which to admit parol proof of the contract.

It is further urged by appellant that the court erred in refusing to hold certain propositions of law.

One of those propositions was to the effect that appellees were bound to act upon the information derived from the agent of the railroad company above referred to and was properly refused. The others refused involved either questions of fact, or legal propositions which were well enough stated in other propositions which were held.

Those held were quite elaborate and complete, and we think the appellant can not fairly complain of the action of the court in this respect.

On the whole case, it is not perceived that the judgment is unjust or erroneous. It will therefore be affirmed.